UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHERINE L. JERNIGAN,                     Case No. 13-10454

          Plaintiff,                   Mark A. Goldsmith
v.                                         United States District Judge

COMMISSIONER OF SOCIAL SECURITY,           Michael Hluchaniuk
                                           United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 14, 16)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On February 5, 2013, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Mark. A. Goldsmith referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims for a period of disability and disability insurance benefits.  (Dkt. 4).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 14, 16).

### B.   Administrative Proceedings

Plaintiff filed the instant claims on May 3, 2010, alleging that she became

disabled beginning March 24, 2009.  (Dkt. 11-2, Pg ID 75).  The claim was

initially disapproved by the Commissioner on July 16, 2010.  (Dkt. 11-2, Pg ID

75).  Plaintiff requested a hearing and on April 1, 2011, plaintiff appeared with a

representative before Administrative Law Judge (ALJ) Jessica Inouye, who

considered the case de novo.  In a decision dated May 26, 2011, the ALJ found

that plaintiff was not disabled.  (Dkt. 11-2, Pg ID 75-84).  Plaintiff requested a

review of this decision.  The ALJ's decision became the final decision of the

Commissioner when, after the review of additional exhibits,[1] the Appeals Council,

on August 29, 2012, denied plaintiff's request for review.  (Dkt. 11-2, Pg ID 55-

57); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

> For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for

summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).  Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ.  In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 42 years of age at the time of the most recent administrative hearing and 40 years old on the alleged onset date.  Plaintiff has past relevant work as a cashier.  (Dkt. 11-2, Pg ID 83).  The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 11-2, Pg ID 77).  At step two, the ALJ found that through the date last insured, the claimant had the following severe impairments: personality disorder, depression, anxiety, obesity, and history of poly-substance abuse.  (Dkt. 11-2, Pg ID 77).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  *Id*.  The ALJ concluded that plaintiff has the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant would require work which is non-production oriented, simple, routine, unskilled, with an SVP of one or two. The claimant should not work in close proximity to coworkers (meaning that the claimant could not function as a member of a team), should have minimal direct contact with the public, the work is essentially isolated with only occasional supervision. The claimant's work should be low stress (meaning that only occasional decision-making is required and only

occasional changes in the work environment).

(Dkt. 11-2, Pg ID 79).

At step four, the ALJ found that plaintiff could not perform her past relevant work as a cashier.  (Dkt. 11-2, Pg ID 83).  At step five, the ALJ concluded that there were a significant number of jobs in the national economy that plaintiff could perform.  Based on the foregoing, the ALJ concluded that plaintiff was not under a disability from the claimed onset date through the last date insured.  (Dkt. 11-2, Pg ID 84).

B.    Plaintiff's Claims of Error

Plaintiff first claims that the ALJ erred in assessing plaintiff's credibility. Plaintiff suffers with a personality disorder, depression, anxiety, obesity, and a history of poly-substance abuse.  (Tr. 28).  Her medical records document her on-going struggle to control the symptoms of her mental health impairments. During her August 4, 2009 report process, it was noted that plaintiff suffered with symptoms of depression and anxiety.  Symptoms of her depression included: anhedonia, agitation, excessive guilt, fatigue, diminished self esteem, insomnia, hopelessness, and suicidal ideation.  (Tr. 262).  Plaintiff's anxiety symptoms include agitation, excessive worry, fatigue, irritability, poor concentration, restlessness, sleep disturbance, and tension.  (Tr. 262).  Unfortunately, plaintiff continued to treat but in October of 2009, it was noted that plaintiff still presented

as disconnected and anxious.  During this visit, more medication was added to control her symptoms.  (Tr. 248).  Plaintiff's medical records show that she has tried many different medications to combat her symptoms without relief.  (Tr. 232).  Plaintiff's mental health symptoms continued to present despite on-going treatment and therapy.  During her February 11, 2010 examination, plaintiff was noted as experiencing persistent anxiety, mind racing, and racing thoughts.  (Tr. 246).  As part of the on-going assessment process, plaintiff underwent an updated assessment on April 23, 2010.  (Tr . 243).  According to plaintiff, even after treating for an extended period of time, plaintiff was noted as being nervous, worried, obsessive, unable to concentrate, having suicidal thoughts, and unable to focus on and complete tasks.  (Tr. 243).  Plaintiff went to the Emergency Room with increased anxiety and panic.  While in the Emergency Department, she was diagnosed with Boarderline Personality Disorder and OCD.  Moreover, she was noted to have many cuts on her arms that were self-inflicted with a knife.  (Tr. 303).  Plaintiff endorsed feelings of wanting to harm herself and was tearful.  (*Id*.).  A treatment note on July 27, 2010 further revealed that plaintiff felt nervous, shaky, nauseated, unable to eat, and experienced increased stress.  (Tr. 260).  During this same month, plaintiff's records continue to document that she was suicidal and engaged in cutting behavior.  (Tr. 332).  It was noted that she was often too sick and depressed to get up.  (Tr. 332).

According to plaintiff, her testimony is consistent with her testimony at the hearing. Plaintiff testified that she experiences chronic symptoms from her mental health impairments that include racing thoughts and anxiety starting when she wakes up. (Tr. 53). This makes her unable to focus on one task at a time. As she explained, plaintiff is "busy all day, but accomplishes nothing." (Tr. 53). Moreover, plaintiff has problems dealing with people and as a result, suffers with panic attacks when she is forced to speak with them. (Tr. 47). Plaintiff explained that at her last job, she would experience a panic attack even if she was forced to talk to a customer about very simple things. (Tr. 48). She also was unable to speak with customers on the phone. *Id*. Additionally, plaintiff explained that she was very uncomfortable around any of her coworkers because she is unable to determine what an appropriate relationship would be with them. (Tr. 48).

In addition to committing reversible error in failing to properly consider plaintiff's subjective complaints, the ALJ also improperly used plaintiff's daily activities to undermine her credibility. According to plaintiff, it has been determined in previous cases before the 6th Circuit that, "some fairly minimal daily activities are not comparable to typical work activities." *Rogers v. Comm'r of Soc. Sec.*, 486 F. 3d. 234, 248-49 (6th Cir. 2007). Further, this very Court has ruled that there is a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC. *Stennett v. Comm'r of Soc. Sec.*, 476 F.

Supp. 2d 665, 672 (E.D. Mich. 2007).  In this case, the ALJ determined that plaintiff's daily activites of preparing meals, caring for her daughter, and attending classes were contrary to her claim of disability.  According to plaintiff, a closer look at her testimony shows why she is able to do these things.  Plaintiff attends college classes in order to try to enable herself to have a job where she can work from home as a medical biller.  (Tr. 50).  When questioned by the ALJ, plaintiff explained that she is able to attend classes only if she sits in the back of the room and if no one talks to her.  (Tr. 49).  As she testified, plaintiff often experiences panic attacks at the grocery store and will leave her cart in the store.  (Tr. 56).  Plaintiff explained that she does not like to see people that she knows in the stores for fear that they will speak to her and figure out that something is wrong with her. (Tr. 56).  Moreover, plaintiff does not like to be in the grocery store because of the security cameras and "people watching her."  *Id*.  She often feels overwhelmed and can have a panic attack if she receives a call while at the grocery store.  (Tr. 57). Plaintiff also explained that criticism also causes panic attacks.  *Id*.  Because of her feelings of being overwhelmed and like everyone is "out to get her," plaintiff becomes easily overwhelmed. (Tr. 67).  In fact, plaintiff testified that she calls her sister to take and care for her daughter when she is too overwhelmed.  *Id*. According to plaintiff, her mental health impairments make it very difficult for her to concentrate.  (Tr. 63).  In fact, to retain the information in her classes, plaintiff

is forced to read the same things several times.  *Id*.

Plaintiff also argues that the ALJ made an erroneous Step Five determination that is unsupported by the substantial weight of the evidence, pointing out that the burden is on the Commissioner at Step 5.  *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003); *Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987).  The validity of a Vocational Expert's (VE's) testimony depends on whether the ALJ references all of a claimant's limitations.  *Id*. at 779.  In his RFC, the ALJ determined that plaintiff retained the ability to perform work at all exertional levels but with additional limitations for non-production oriented, simple, routine, unskilled work, no close proximity to coworkers, minimal direct contact with the public, isolated with only occasional supervision, low stress work (occasional decision-making is required and only occasional changes to work environment).  (Tr. 21).  According to plaintiff, this assessment falls short of including all of plaintiff's physical and mental limitations.  The ALJ had a duty to include those limitations in his Residual Functional Capacity assessment, which is defined as "the most you can still do despite your limitations."  20 C.F.R. § 416.945.  According to 20 C.F.R. § 404.1545, an ALJ must "first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis."  In particular, "a limited

ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work." 20 C.F.R. § 404.1545. Moreover, SSR 85-15 explains, "because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job." Further, this Ruling adds, "any impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." SSR 85-15. Thus, in light of the ALJ's failure to include the limitations of plaintiff's depression and anxiety in his RFC, the decision is not supported by substantial evidence and cannot stand.

     C.    <u>The Commissioner's Motion for Summary Judgment</u>

     While plaintiff suggests that the ALJ failed to properly consider her subjective complaints, the Commissioner contends that it is not entirely clear from plaintiff's argument exactly where she believes the ALJ to have erred, but in any case the ALJ fulfilled her obligation to "be sufficiently specific to make clear . . . the weight the adjudicator gave to [plaintiff's] statements and the reasons for that weight." Soc. Sec. Rul. 96-7p 1996 WL 374186 at *4 (July 2, 1996). According

to the Commissioner, the ALJ properly determined that "the evidence contained in the record does not support plaintiff's allegations of totally incapacitating symptoms." (Tr. 33). In particular, the ALJ found that "[t]he medical opinions reflect that [Plaintiff's] mental issues are not so severe that they interfere with her ability to perform at least some full-time work." (Tr. 33). The ALJ noted that the treatment of plaintiff's mental health issues had been "routine, conservative, and limited." (Tr. 32). Plaintiff quit her program of mental health treatment, and, shortly before the hearing, stopped taking all of her medications, suggesting "that the symptoms may not have been as serious as has been alleged." (Tr. 32). *See* Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *7 (July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints."); *Strong v. Soc. Sec. Admin.*, 88 Fed.Appx. 841, 846 (6th Cir. 2004) ("[W]hen a claimant alleges pain so severe as to be disabling, these is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."). Additionally, the ALJ noted that plaintiff had a sporadic work history prior to her onset date, raising a question "as to whether [plaintiff's] continuing unemployment is actually due to medical impairments. (Tr. 32). When, as here, there is a lack of 'detailed corroborating medical evidence, [courts] will generally defer to the ALJ's assessment.'" *Blancha v.*

*Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990).

Plaintiff also contends that her daily activities were improperly taken into account in the ALJ's credibility determination. According to the Commissioner, the activities of daily living are properly part of the credibility determination undertaken by the ALJ. When objective medical evidence is lacking, daily activities are an important means for the ALJ in determining whether the claimant's reports are credible. Plaintiff paraphrases *Rogers v. Commissioner of Social Security*, 486 F.3d 234 (6th Cir. 2007), where the court noted that some "minimal daily functions are not comparable to typical work activities." *Rogers*, 486 F.3d at 248. However, the Commissioner contends that whether or not plaintiff's daily activities are equivalent to work activities is not a pertinent question. The ALJ discussed plaintiff's daily activities not to determine her ability to work, but rather because of the inconsistency between plaintiff's allegations and her lifestyle. "One strong indication of the credibility of an individual's statements is their consistency," and when a claimant's daily activities are inconsistent with the asserted disability, the ALJ may properly consider that inconsistency when determining credibility. Soc. Sec. Ruling 96-7p, 1996 WL 374186 at *5 (July 2, 1996). According to the Commissioner, the ALJ properly considered plaintiff's daily activities in assessing her credibility. She noted that plaintiff "has not reported any particular help in maintaining the residence" or in

caring for her daughter, "which can be quite demanding both physically and emotionally." (Tr. 32). In addition, the ALJ noted that, despite her claim of being unable to leave home, plaintiff "shops, goes to classes, attends her daughter's events, and goes outside 'often.'" (Tr. 32). Furthermore, the ALJ found that plaintiff's ability to manage household chores, drive, complete college level course-work, and care for her daughter with limited assistance evidenced some ability to concentrate. (Tr. 32). Based on these inconsistencies, the Commissioner contends that the ALJ properly determined plaintiff to be only partially credible. (Tr. 32). Therefore, the ALJ did not err in considering plaintiff's daily activities when making her credibility determination, and the Commissioner urges the Court to uphold the ALJ's determination that plaintiff was not disabled.

While plaintiff also argues that the ALJ improperly relied on VE testimony which was based on a faulty RFC assessment, the Commissioner contends that plaintiff does not propose any specific limitations that should have been included in the RFC assessment; rather she only complains that her depression and anxiety were not included in the RFC. According to the Commissioner, the crux of plaintiff's argument is not that the VE's determination was mistaken or based on a faulty premise, but that she disagrees with the ALJ's RFC assessment. Thus, the Commissioner argues that plaintiff is attempting to sell an RFC argument as a Step Five argument. Somewhat misleadingly, plaintiff asserts that "the burden is on the

Commissioner at Step Five." The Commissioner points out, however, that the burden which falls on the Commissioner at Step Five is that of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). The Commissioner's burden at Step Five does not require the Commissioner to prove that the RFC used to determine whether the claimant can make an adjustment to other work is accurate, since the RFC is the same one determined at Step Three. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2) ("We are not responsible for providing additional evidence about your residual functional capacity because we will use the same residual functional capacity assessment we used to determine if you can do your past relevant work"). The ALJ has the responsibility at Step Five of showing that, given the RFC which she found at Step Three, that the claimant can still work and that jobs that the claimant can perform exist in significant numbers. To determine what jobs exist and in what numbers, ALJs often rely on the testimony of VEs. *See* HALLEX I-2-5-50.

Plaintiff argues that the ALJ failed to include her depression and anxiety in her RFC assessment, but the Commissioner maintains that she errs by conflating impairments and limitations. Depression and anxiety are among the severe impairments that plaintiff was determined to have. (Tr. 28). They are not,

however, specific limitations indicating what plaintiff can still do.  The Commissioner points out that when posing hypotheticals to a VE, an ALJ need not specifically identify each and every one of the claimant's medical conditions, so long as the hypotheticals "reference all of a claimant's limitations."  *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004), citing *Foster v. Halter*, 279 F.3d 348, 356 (6th Cir. 2001).  Furthermore, the limitations in a hypothetical need not include every restriction which plaintiff claimed to have, only the ones which the ALJ finds are supported by the evidence.  *See Foster*, 279 F.3d at 356 (holding that the ALJ did not err in declining to include limitations which were inconsistent with and unsupported by the record).  Limitations are part of a RFC finding, and the RFC assessment is the responsibility of the ALJ.  20 C.F.R. §§ 404.1546, 416.946.  The RFC determination is "an assessment of what [plaintiff] can and cannot do, not what [she] does and does not suffer from."  *Mitchell*, 256 Fed.Appx. at 772.

According to the Commissioner, the ALJ made ample allowance in her RFC determination for plaintiff's limitations.  The RFC assessment includes limitations on working in close proximity to co-workers, contact with the public, stress, and supervision.  (Tr. 30).  These are essentially the issues that led plaintiff to quit her job at JCPenny.  (Tr. 46-47).  These limitations are also consistent with the RFC assessment performed by the state agency physician, Dr. Douglass.  (Tr. 279-80).

According to the Commissioner, the ALJ properly granted "considerable weight" to Dr. Douglass's opinions due to his expertise "in the evaluation of disability claims under the Act" and because the opinion was "well supported by the objective medical evidence of record."  (Tr. 32).  See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.").  What plaintiff is asserting is that the ALJ should have found her to have a more restrictive RFC.  However, the Commissioner contends that she provides no basis for a more restrictive RFC finding other than her own subjective statements.  And, no acceptable medical source in the record opined that plaintiff had greater limitations than those found by the ALJ in her RFC determination.  While Ms. Low (a nurse practitioner) opined that plaintiff could not meet competitive standards in some areas, and could not work due to her schooling and treatment, the ALJ properly noted that Ms. Low is not an acceptable medical source.  (Tr. 33); see 20 C.F.R. §§ 404.1513, 416.913; Soc. Sec. Ruling 96-2p, 1996 WL 374188 (July 2, 1996).  Thus, the Commissioner maintains that the ALJ's RFC determination was supported by substantial evidence in the record, including the State agency disability assessment.  (Tr. 32).  The RFC determination is the province of the ALJ, and is supported by substantial evidence.  Accordingly, the Commissioner asks the Court to find that the ALJ committed no

error by not mentioning depression or anxiety in her hypothetical to the VE, and the Commissioner's decision that plaintiff is not disabled should be upheld.

D.    Plaintiff's Reply

According to plaintiff, defendant attempts to refute her arguments through the use of improper semantics and attempts to draw attention away from plaintiff's argument.  Plaintiff maintains that she does not "conflate" impairments and limitations.  Rather, plaintiff argues that the ALJ failed to include the limitations caused by her depression and anxiety.  Plaintiff points out that "during her August 4, 2009 report process, it was noted that Plaintiff suffered with symptoms of Depression and Anxiety.  Symptoms of her depression included: anhedonia, agitation, excessive guilt, fatigue, diminished self esteem, insomnia, hopelessness, and suicidal ideation. Plaintiff's anxiety symptoms include agitation, excessive worry, fatigue, irritability, poor concentration, restlessness, sleep disturbance, and tension."  (Tr. 262, Plaintiff's brief, p. 12).  Plaintiff asserts that it is only to show that the ALJ's error was not harmless, that she argues that the hypothetical presented to the VE was not sufficient based on the improper RFC. The ALJ presented his inaccurate RFC to the Vocational Expert and ultimately relied on these findings to make his decision that the plaintiff was not disabled. (Tr. 24).  According to plaintiff, her mental limitations are not accommodated by the RFC created by the ALJ.  Therefore, because the ALJ relied on the RFC to make the

final determination that plaintiff was not disabled, this decision cannot stand. (Tr. 24).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the

Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B.     <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

Plaintiff contends that the ALJ failed to adequately assess her credibility concerning the intensity and persistence of her symptoms associated with her depression, anxiety, and personality disorder.  As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [she is] disabled."  20 C.F.R. § 404.1529(a).  Instead, the Sixth Circuit has repeatedly held that "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms."  *See Workman v. Comm'r of Soc. Sec.*, 105 Fed.Appx. 794, 801 (6th Cir. 2004).

"It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001), quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  A court is to accord an "ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [a court does] not, of observing a witness's demeanor while testifying."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).  The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason."  *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).  However, an ALJ who rejects a claimant's testimony must "clearly state"

the reasoning for doing so. *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994);
*see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007) (an
ALJ's credibility determination regarding subjective complaints must be
reasonable and supported by substantial evidence). "[W]here an ALJ's reasoning
underlying his decision to discount a claimant's credibility is partially but not fully
flawed, remand may nonetheless be appropriate." *Kerr v. Comm'r of Soc. Sec.*,
2013 WL 388987, at *16 (E.D. Mich. 2013), citing *Allan v. Comm'r of Soc. Sec.*,
2011 WL 2670021 (E.D. Mich. 2011), citing *Ford v. Astrue*, 518 F.3d 979, 982-93
(8th Cir. 2008), *adopted by* 2013 WL 388176 (E.D. Mich. 2013).

In this case, the ALJ's credibility determination is thorough, detailed, and
amply supported by the record. The ALJ properly looked at plaintiff's school
attendance, daily activities, and ability to care for her daughter as undermining the
claimed severity of her symptoms and limitations. Indeed, the ALJ noted that
plaintiff "has not reported any particular help in maintaining the residence" or in
caring for her daughter, "which can be quite demanding both physically and
emotionally." (Tr. 32). In addition, the ALJ observed that, despite her claim of
being unable to leave home, plaintiff "shops, goes to classes, attends her
daughter's events, and goes outside 'often.'" (Tr. 32). Furthermore, the ALJ
properly found that plaintiff's ability to manage household chores, drive, complete
college level course-work, and care for her daughter with limited assistance

evidenced some ability to concentrate.  (Tr. 32).  Based on these inconsistencies, the undersigned agrees with the Commissioner that the ALJ properly determined plaintiff to be only partially credible.

In addition, the ALJ found that "[t]he medical opinions reflect that [plaintiff's] mental issues are not so severe that they interfere with her ability to perform at least some full-time work."  (Tr. 33).  Here, while plaintiff's treating nurse practitioner found her to be limited in several ways, plaintiff does not explain how the ALJ failed to accommodate those restrictions in the RFC.[2]  The ALJ also noted that the treatment of plaintiff's mental health issues had been "routine, conservative, and limited."  (Tr. 32).  And, the ALJ observed that plaintiff quit her program of mental health treatment, and, shortly before the hearing, stopped taking all of her medications, suggesting "that the symptoms may

---

[2]  Notably, plaintiff does not dispute that the ALJ was not required to give the nurse practitioner's opinion controlling weight because a nurse practitioner is not an "acceptable medical source" entitled to such deference under the regulations.  Ms. Low's opinion is also not counter-signed by a physician or other acceptable medical source.  Thus, the ALJ was only required to consider the opinion, but was not required to give it controlling or substantial weight. Several courts have concluded that where a licensed social worker or other unacceptable medical source is working as part of a treatment team and an acceptable medical source has "signed off" on the opinions, they should be evaluated as a treating physician opinion, but that does not appear to be the case here. *See e.g.*, *Gomez v. Chater*, 74 F.3d 967, 970-971 (9th Cir. 1996) (non-medical source must be integral to team, and the acceptable medical source must undersign her findings); *Keith v. Astrue*, 553 F.Supp.2d 291, 301 (W.D.N.Y. 2008) (ALJ erred and remand required where the ALJ discounted the reports and notes signed by a psychiatrist because they were primarily prepared by a social worker); *Wethington v. Astrue*, 2009 WL 2485395 (W.D. Ky. 2009) (Social worker's records were signed by treating psychiatrist, who would be an "acceptable medical source" and whose opinion may be entitled to controlling weight under the treating physician rule.).

not have been as serious as has been alleged." (Tr. 32). Plaintiff does not suggest that she stopped seeking treatment because of her mental limitations or that her conservative treatment was based on financial constraints or some other inability to comply with any recommended treatment. Essentially, plaintiff's argument is that the ALJ improperly did not fully credit her testimony, which is supported by the medical records. However, for all of the reasons outlined above, the undersigned concludes that the ALJ's credibility determination is fully supported by substantial evidence and should not be disturbed.

As to plaintiff's claim that the ALJ's step five finding is improper, the undersigned agrees that plaintiff is attempting to refute the RFC finding via a purported step five error. Plaintiff points to her diagnoses of anxiety and depression and contends that the ALJ failed to account for them in the RFC. Plaintiff's "diagnoses," in and of themselves, are not evidence that she is limited in any particular way. Simply because plaintiff suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC. Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from–though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her

functional capacity to do work.  One does not necessarily establish the other."
*Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004).  "The
regulations recognize that individuals who have the same severe impairment may
have different [residual functional capacities] depending on their other
impairments, pain, and other symptoms."  *Griffeth v. Comm'r of Soc. Sec.*, 217
Fed.Appx. 425, 429 (6th Cir. 2007); 20 C.F.R. § 404.1545(e).   Thus, the mere
existence of any condition from which plaintiff may have suffered does not
necessarily establish any functional limitation or disability.

Simply put, plaintiff has not established that the ALJ failed to accommodate
all of the limitations found to be credible and supported by substantial evidence in
the record.  Plaintiff also does not point to any acceptable medical source who
opined that she was more limited than as found by the ALJ.  Finally, plaintiff does
not explain, as noted above, how the limitations noted by Ms. Low were not
accounted for in the ALJ's RFC, which limited plaintiff in several significant ways
based on her mental limitations.  For these reasons, plaintiff's second claim of
error should be rejected.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for
summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 30, 2014                         s/Michael Hluchaniuk
                                               Michael Hluchaniuk
                                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 30, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Thomas J. Bertino, Kelie C. Schneider, Judith E. Levy, Marc Boxerman, Adam Sorkin and Commissioner of Social Security.

                                               s/Tammy Hallwood
                                               Case Manager
                                               (810) 341-7887
                                               tammy_hallwood@mied.uscourts.gov